Good morning. Before we start, I'd like to thank the judges of the National Institute of Cork and the Northern District of California for hosting us here this morning as we honor our statutory obligation to sit from time to time in other parts of our circuit. The first case this morning is 081123 Informatica Corp v. Business Objects. Mr. Furness. Thank you very much, Your Honor. Good morning. May it please the court. Once again, I'm Dan Furness and I represent the defendant, appellant, and cross-appellee Business Objects Data Integration, Inc. I know from past experience with this court that the court has read the briefs and is familiar with them, and so with this amount of time, and I would like to reserve four minutes for rebuttal time, I'm going to address a single issue. The issue that I think defines the critical question before this court and the issue which is dispositive of the question of whether the judgment in this case can be maintained. And that is the definition and claim construction of the key term in both patents. And that term is transformation object. Now, this is an unusual issue of claim construction because Business Objects, although it did not agree with the Markman order issued by District Judge White, is not appealing that that order, ensuring the construction, was incorrect. Rather, the error was that when the case went to trial two years later in front of Magistrate Judge LaPorte, the court in the middle of the trial changed the claim construction in a highly material way, prohibited Business Objects from presenting its principal infringement defense after it had already told the jury it would be presenting that defense, and in so doing, let the case go to the jury with an incorrect claim construction that was dramatically different than the written Markman order. Now, to explain that in some detail, because as I say, it is not as straightforward of a claim construction issue as this court may have seen in other cases, it's important to have some background here. So I can be clear, and maybe you would explain this to us, but we're short in time. So is this more of a process argument than a substantive argument? I mean, you've explained to us now that things flipped around. No, Your Honor. We debated whether to argue that the change mid-trial was a due process violation, but decided simply that it was simply an incorrect claim construction. So what we have is a wrong claim construction as applied at trial. And what was the – actually, from your briefs, it was a little confusing to me. What was your – what is your claim construction of transformation objects? Well, Your Honor, we proposed one that was rejected by Judge White, but his claim construction, which we accepted and which we were going to trial on and which we intended to argue, was as follows. That a transformation object is, quote, a reusable component for processing data according to predefined instructions. Now, although we argued for a different claim construction, Judge White, Jeffrey White, adopted this and we went to trial on that. What happened at trial, Your Honor, is a week into the trial, as a result of an evidentiary objection, Magistrate Judge LaPorte prohibited business objects from arguing that its software did not have any identifiable component which transformed data or processed data according to predefined instructions. And so what happened was the trial judge got confused, misunderstood, and essentially read the word component out of Judge White's written claim construction order. Business objects would have shown that it did not have transformation objects that were reusable, identifiable components. Now, again, as I say, it's an unusual issue. Mr. Furness, could you explain to me – I'm still puzzled because the trial judge essentially limited your argument only with respect to the definition of transformation, did he not? Actually, Your Honor, she said that any argument that – That was the magistrate, but what about Judge White? Judge White said – we argued that the component had to be in a particular form. He said it did not have to be in a particular form, but it still had to be a reusable component. At trial, if you look at the claim, it says that the transformation object has to have corresponding metadata. And that language of metadata that corresponded with the transformation object was added during prosecution for reasons of patentability. The site is in the record at A12687. So you had to have two things. You had to have metadata that was associated with the transformation object. Now, the only accused feature in the product was something called an EDF. And business objects had presented evidence in an opening statement to the jury that stated that its EDFs were only metadata, that it did not have any particular transformation objects with which that metadata was associated, but in fact used a very different software architecture, whereby an optimizing engine decided how to actually transform the data, and that there were no specific components. But you were not prevented from showing that there was no metadata that corresponded to the EDFs, did you? No, Your Honor. We admitted we had the metadata. The thing we said we didn't have were transformation components. And if I may… But then why isn't this an infringement issue? You're not quibbling with the original claim construction, right? You accept the original claim construction. That was the claim construction provided to the jury, was it not? Well, no. The court instructed that the only remaining infringement issue was inducement, because she changed the claim construction and ruled that the only non-infringement argument that business object had presented, which had been identified pre-trial, was not allowable, was in violation of the judge's… She misinterpreted Judge White's claim construction order and ruled that business… We admitted we had metadata, EDFs for metadata. What we didn't have were any discrete transformation objects. In their final infringement contentions… And you put that evidence on to the jury, right? Well, we didn't get to our case. I told the jury in opening statement that we would present that evidence. We told the court in pre-trial that that was our position, and at one point the magistrate judge said, we'll let the jury decide that one. Then on Friday afternoon in the first week of the trial, in an argument about the admissibility of some evidence, the judge took briefs, and on Monday morning she ruled that any argument that business objects did not have any discrete transformation components, any identifiable objects, was a violation of Judge White's claim construction order and could not be presented. And at that point, the only defense left to infringement was inducement. She instructed the jury that if the EDFs were used by the customers, the only issue left was to prove or not prove for them to decide whether it had been induced. She, in effect, granted a partial directed verdict on infringement, except for inducement, midway through the trial, because she read the term component entirely out of Judge White's prior construction. I don't think she intended to do that, but that was the effect of it. So, in effect, midway through the trial, and I know this court has said a court can change a claim construction during trial if it becomes convinced that the prior construction is incorrect. It has a duty to change that construction. But here, the change in the construction removed any meaning from the claim construction and was just clearly erroneous. But if the court had adopted your claim construction, would it have essentially excluded the preferred embodiment of the invention? No, it would not, Your Honor, because both the preferred embodiment and all of the embodiments talked about discrete, reusable components. And if I may elaborate on that a little bit, because I think it's very important. In the prosecution of the patent, the term transformation objects was used, and it's important to keep in mind it's discussed in our brief in other areas with regard to the inequitable conduct issue, but Informatica did not invent ETL software. So the idea of transforming data was well known. This was an improvement patent. The patent office rejected the original claims, and it was at that point that the metadata corresponding to particular transformation objects was added. In the remarks, Informatica told the patent office that the transformation objects act as building blocks. In the declaration, in support of the claim construction, Mr. McGovern argued that the term object was well known and represented the concept that's at the heart of object-oriented software programming. But does the transformation object have to contain the metadata? It can contain the metadata, or the metadata can be separate. That was not the issue. The issue was did you have to have a specific object, a software object, which did the transformation. Business object software does not have reusable objects. It interprets the metadata and applies a different algorithm to decide what functions it's going to perform. This was illustrated in their final infringement contentions. In May of 2006, Informatica's expert identified the transformation objects and business objects product as C++ objects. Now C++ objects are reusable pieces of software code. In the old days, software engineers, if they had to do a function over and over again, they would write it over and over again. And then somebody figured out, let's just write it once and use it often. And those are called objects, and they're called C++ objects. In their final infringement contentions, Informatica identified certain C++ objects in business object software as being the transformation objects. In his deposition, he realized as a result of questioning that the C++ objects that he identified did not do the transforming of the data. And so, with the court's allowance, he changed his opinion. And Informatica's position at trial was that there did not have to be any particular discrete software object or chunk of code that was the transformation object. Any part of the software. It would not have to contain a metadata, is that what you're saying? No, Your Honor. There has to be metadata plus something else. Plus the transformation object. So that has to be included. And we didn't have one. All RDFs were metadata. They did not do the actual transformation. So you're talking about metadata. You don't have metadata that corresponds to the transformation object. We have metadata, but it does not correspond to any particular... And the judge's order precluded you from putting on evidence in that regard? Yes, Your Honor. The judge instructed the jury on, I believe, the Tuesday of the trial that if the product was used, if the EDF was used in the product, it infringed. Let me, just before your time runs out, you sort of started to touch on some of the invalidity issues. From what I could tell from the record, you, at some point, had some invalidity defenses that were considered by the court, and obviously they're not before us. Whatever happened to those invalidity defenses? The jury did not agree with us on those. The principal piece of prior art was Informatica's own prior product, which had transformation objects in the process. So those issues went to the jury? Validity did go to the jury, yes, Your Honor. Obviousness? Obviousness was not raised. It was argued as a 102 only. So the prior art was that particular program dealing with the 3-0 system? It was both Informatica's prior product and two other prior art products, which were all on the market. But Informatica's product was a 3-0 system? Yes, they're 3-0, and they said their patent was embodied in their 4-0. And that's why this amendment of the claim was important, because ETL software already existed. The amendment of the claim that said you had this metadata associated with particular transformation objects, that was the improvement that made this patentable. When you took away the requirement that metadata correspond to a particular transformation object, you took away the basis of validity of the patent. Did you ever raise a 101 defense? Prior invention, Your Honor? Statutory invention. Statutory invention. Not specifically, Your Honor. It was raised as an anticipation defense. Well, the facts were on the record in that way. It was simply argued that the invention was not novel. In the summary judgment motion, I believe we did raise a 101, but I think it was the same issue. There was no doubt that these prior programs were on sale and in the market well before the filing date. So there wasn't any distinction between anticipation and prior invention for these purposes. Did you ever raise whether it was statutory subject matter to begin with? I did not raise that argument, Your Honor. And I would simply say that what happened here is in their final infringement contentions, Informatica identified C++ objects. When Judge LaPorte made this ruling, she said, and this appears at A1333 to A1338, and if it isn't a C++ object, which I agree with the claim if it is not, then what is it? And she goes on to say, I mean, software is soft, it's not hard. She misunderstood. There are such things as discrete software objects. That's what Informatica told the Patent Office was required. That was what was missing from the business object software. And that was the evidence that although we promised the jury we would present that evidence, we were unable to do so. It was highly prejudicial, and I think it calls for the reversal of the judgment below. And I see I've used that most of my time. We'll give you your rebuttal time back. Thank you very much, Your Honor. Mr. Passahoff. Good morning. May it please the Court, I'm Ben Passahoff representing Informatica. And I believe that neither the correct procedural history nor the issue that was presented in the district court were explained by counsel. The procedural history is actually spelled out by the district court in an order she entered on this very issue. It's the order which was in the appendix starting at page 42, in which she dealt with the problem she was encountering. And that problem was one she had warned us about, which was counsel were not to argue plain construction issues to the jury. She would instruct the jury on those issues, and they were for the court to decide, an issue, of course, which this court is directed to be the law. What happened is, as we started the trial... But did the trial judge essentially state that the definition of transformation objects could not be argued? She said that the witnesses could not be questioned about what that meant, what the judge's order on plain construction meant. Contrary to that, what happened is, in cross-examining our technical expert, business objects lawyer started a cross-examination, which essentially was about the prosecution history of the patents, and was obviously headed towards trying to impeach the court's plain construction. We objected, and that got us into this issue. After both parties filed briefs, the court entered the order, which appears at page A42 on this issue. But the judge was trying to protect her interpretation of plain construction at that point. The judge was trying to stop counsel from advocating different interpretations of the plain construction. She took the position that it was a matter of law for her to instruct on, and it was not for counsel to be arguing differing constructions. But they had objected initially to the plain construction, so they had preserved their right to challenge a plain construction on appeal, right? They had objected to a plain construction, having argued a very different plain construction than what we're hearing in this appeal. What then happened is they made a motion... Could you explain what you just said? What is the difference? In the district court, we had a plain construction hearing before Judge White, and business objects proposed plain construction at that time, a transformation object, had nothing to do with what they're arguing on this appeal. Yeah, but they explained that. Yeah, so the judge, Judge White, gave a plain construction, and they said they kind of accepted that. Their issue is between what if any changes occurred to that plain construction between White and not. And are you suggesting they're not allowed to argue that? If I can go on and explain what happened next, what then happened is they moved Judge LaPorte to clarify, as they put it, that plain construction. And that order was denied. And she said that she thought the plain construction was clear, and she specifically said this notion that component has to be some discrete chunk of code somewhere was not what the plain construction meant. And she ruled pre-trial that that was the case in response to one of the motions and limited. We then got to trial, and ignoring that order, business objects tried to cross-examine the technical expert on this very issue. And that's why, in the middle of trial, we got back into it, as counsel describes. And as Judge LaPorte explains in the order that she issued on this subject at 842, at the time of the motion in limine, business objects had said in their brief, if we lose on this issue, then we essentially concede that as a matter of law, we infringe. And she quotes that in this order. And what she ruled at that time is that she was not going to let them try to use the witnesses to impeach the court's plain construction order or to construe it differently than she ordered it be construed. But there was a change in the plain construction from the time Judge White had issued the order to the time Judge LaPorte presented the plain construction.  Isn't that what they're arguing, though? Isn't that the basis of their argument? They are pretending there was a change. I concede that. But Judge LaPorte said that the plain construction of transformation object was exactly what Judge White said it was. And in construing that, she went back to Judge White's opinion and said this is what Judge White meant when he granted that order in his opinion. So is there any contention, then, that the transformation objects did contain metadata? Was the transformation object as originally interpreted, was it to contain metadata? Whether the transformation object contained metadata or not was not an issue in the plain construction. As I understand business objects' argument, that actually comes out of the rest of the provisions of the claim, which says there has to be metadata corresponding to the transformation object. And they say that somehow corresponding, that word means it has to be different and somewhere else or excluded. All of the embodiments in the patent, in fact, have the metadata in the transformation object. It's part of the code that's shown in the preferred embodiment spelled out for each of the transformation objects in the patent. So basically, if the interpretation is adopted as they would like it to be adopted, you would eliminate the preferred embodiment of the invention. Is that correct? Each example in the preferred embodiment of a transformation object would be excluded from the definition based upon that definition. Yes, Your Honor. And you do agree that the judge precluded them from, their witnesses from testifying that their product didn't have metadata that corresponds to the transformation objects? No, what the judge ruled based upon their concession, as she quotes it in her order, was that they could not argue that they did not meet this element and therefore they infringed. Counsel also suggests that there was some sort of a concession that the transformation object had to be this single discrete chunk of code. Because in prosecution history, there was this argument by analogy that transformation objects are like building blocks and can be moved around and stacked differently and such. And the simple answer to that is this was hardly the specific disavowal that this court requires. What was going on there is prosecution counsel was pointing out what the magic is of this invention. And that is in a user interface, you can take these transformation objects and move them around into long strings of mathematical calculations to transform data. And it is like building blocks in the sense that from the user's point of view, that's what you're doing. But nothing in the patent, nothing in the specification, nothing in the prosecution history has ever said these have to be discrete chunks of code. And what's also interesting, I think, is this court encountered the very similar near-identical argument when it was construing the phrase transform object in the Thiebaud versus Echostalk. And for transform object, as in this case, the defendant said object has to be this nice discrete piece of code, a piece of C++ code. And there, as the district court did here, this court rejected that argument. And it said no, the preferred embodiment shown in the patent has these objects as C++ code. But that doesn't mean that that's required by the word object, that you can encode these things by code at many different levels, which is what business objects does. And that is, in fact, what we accused in our final infringement contentions and expert reports. They're very clear that we weren't accusing just the C++ objects, but rather the entire encoding of these transformation objects, which would show up on the user's screen in the graphical interface as these easily movable items that you could simply point on, click, and put into one of these data flows and have your multiple steps of a transformation flow. So that would be a basic building block of the program? That would be a basic building block as perceived by the user. But how generic does that basic building block become then? Can I use anything which transforms data? Is that covered? What the patent covers is the use in an ETL program, an extract, transform, load program, taking these pieces of code and having them with the specified input and output ports and having them in these data flows. The patent claims require more than just the concept of a transformation object. But the transformation object itself would be a basic building block within the program that could be used generically. Is that correct? If I understand what Your Honor is saying, within a program you could take one of these encoded transformation objects and put it into a data flow? Yes. That would be the basic building block that would be generic to that particular program. Within each company's program, yes, one of these transformation objects could be put into any data flow. You couldn't take an Informatica transformation object and put it into business objects. It would be specific to that particular program. That's correct, Your Honor. The only other topic I'd like to touch on is our cross appeal on willfulness. I think it's a very simple point. We had our trial. The jury found business objects to be a willful infringer based, I think, in large part on their own evaluation that if they proceeded to launch this product, they would definitely infringe Informatica's patent, definitely infringe being the words of their internal evaluation. They then went on and launched without any further legal opinion or advice. The court following trial initially then found that it would enhance damages in a modest amount. We went forward until the Seagate decision was decided. At that point, the court was faced with the dilemma of this new test for willfulness and how she was going to handle it. What she did, we think, was wrong. What she did was say, in her mind, under this new test, there was a lot of doubt that the jury would have found willfulness. Based on that, she declined to enhance damages. Our point is simply that if she really doubted that the jury would have found willfulness under the new test, the remedy wasn't to deny enhancement, but rather to order a new trial on willfulness. We'd ask the court to remand for that purpose. It was a discretionary call on the judge's part. It was discretionary. Regardless of how it comes out, whether the law changed or whatever, it's a discretionary decision. It's a discretionary decision whether or not to enhance damages. Under these circumstances, why wasn't it abusive discretion? I know you don't like what she did, but doesn't it strike you as abusive? The problem, I think, Your Honor, is what she did was, based upon a doubt about how the jury would have come out, she changed from her original judgment of enhancing damages to not enhancing damages. And we believe that if there... You don't think that's a valid thing to factor in in exercising her discretion? I think if the question was how the jury would decide it under the new test, the remedy is to have a new jury decide it under the new test, not to simply assume one way or the other and reach a decision based on that. Thank you, Your Honor. Thank you. Thank you, Your Honors. I'd like to respond in particular. First of all, Mr. Tassajara is right that this issue came up in the context of the motion to exclude particular evidence, and we don't appeal that. The problem is that in excluding particular evidence, the judge went much further, and I want to make this as clear as I can. The claims required two things, metadata and transformation objects. Judge White said a transformation object is a reusable component, component. And our defense was that the SREDFs are metadata, data about data. So if you wanted to do a filter and only get the most expensive sales, the metadata would say, only give us sales for more than $1,000. That's metadata. We had metadata. The defense was that we had no transformation objects because our architecture did not use any transformation components. We were relying on Judge White's interpretation, a reusable component. The defense was there are no components. In response to an evidentiary motion at 4.30 on Friday afternoon, the judge decided that arguing claim construction meant that we could not argue that there were no components. And she says at 8.42 of the record, because Informatica did not object to BODI's opening statement which referenced this theory or make its own motion earlier to preclude this theory, Informatica may not take advantage of BODI's failure to introduce evidence on this point. She took component out of the definition. Now you notice Mr. Passahow did not tell you what the transformation objects are because their argument was the whole thing is the transformation object. There would have been testimony from business objects experts that we don't use chunks of reusable code, that it's an optimizing engine and in some cases the BODI product didn't even do the transformation itself but instead decided the best way to do it was to have the underlying database, especially with mathematical calculations like summing and those things, done with SQL command. So in some cases our software didn't even do the transformation. The argument that there had to be no components, like we called it the everything is the transformation component argument, it makes no sense. There was testimony in the record that a transformation object could be deleted. But business objects had no transformation objects that could be deleted. You could delete an EDF but it was only metadata. Informatica has never identified in this court or the court below what the transformation objects were in the BODI product because they thought they'd found them as C++ objects and when they realized they didn't qualify they went to this gestalt argument. The whole is the transformation object and that was a fundamental mistake because it was the specific use of this component. This really turns your honors on the word component. It was the judge right that software is soft and doesn't have components or was business objects right that software is a type of machine code, that it can have discrete objects or not, and that the preclusion of business objects to use Judge White's, Judge LaPorte tried very hard but she just didn't follow Judge White's claim construction. Now the argument that this would read out the informatica-perverting argument is dead wrong. The claim requires you need metadata corresponding to a particular transformation object. Whether they're in the same click box or in two different click boxes doesn't matter but you still have to have two things. Thing A, metadata. Thing B, transformation component. Now we argued that just, and all of the preferred embodiments in the patent had both metadata and code for particular reusable transformation objects. So our interpretation would not in any way, Judge White's interpretation, this was their interpretation, this was their interpretation that Judge White acknowledged, it wouldn't read out the preferred embodiment. Thank you sir. Thank you very much.